IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KIMBERLEY D. IAMES                                                                            PLAINTIFF

V.                              Civil No. 2:17-cv-02138-PKH-MEF

NANCY A. BERRYHILL, Commissioner
Social Security Administration                                                                DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Kimberley Iames, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.     Procedural Background

Plaintiff filed her application for DIB on January 15, 2015, alleging an onset date of July 3, 2013, due to chronic pain resulting from neck reconstruction surgery and complete right rotator cuff repair; nerve problems in the elbows, wrists, and right ankle; and, depression. (ECF No. 10, pp. 71, 169-175, 188, 209-210). On October 21, 2015, the ALJ held an administrative hearing. (ECF No. 10, pp. 34-69). Plaintiff was present and represented by counsel.

In 2015, Plaintiff was 45 years old and possessed a high school education and an Associate's Degree in Accounting and Science. (ECF No. 10, p. 40-41). Plaintiff had past relevant work ("PRW") experience as a pharmacy manager and bookkeeper. (ECF No. 10, p. 200-207, 257).

By a written decision dated February 10, 2016, the ALJ determined Plaintiff's degenerative disk disease ("DDD") of the cervical spine; herniated nucleus pulposus C5-C6 and C6-C7 levels, status post laminectomy/fusion surgery; status post right rotator cuff repair; epicondylitis of the right elbow; migraines; and, depression were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (ECF No. 10, p. 16). After discounting the Plaintiff's credibility, he found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work involving only occasional overhead reaching and requiring simple tasks and simple instructions. (ECF No. 10, p. 18). With the assistance of a vocational expert, the ALJ determined Plaintiff could perform work as a small product assembler, document preparer, and escort vehicle driver. ECF No. 10, pp. 27).

The Appeals Council denied the Plaintiff's request for review on June 19, 2017. (ECF No. 10, pp. 5-10). Subsequently, Plaintiff filed this action. (ECF No. 1). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 15, 16).

## II. Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial

evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet

3

or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff raises several issues on appeal, including a question as to the supportability of the ALJ's RFC determination. The ALJ concluded Plaintiff could perform sedentary work involving only occasional overhead reaching and requiring simple tasks and simple instructions. For the reasons detailed below, the undersigned finds that this RFC does not adequately account for all the Plaintiff's limitations.

The Plaintiff suffers from numerous severe physical impairments, including DDD of the cervical spine; herniated nucleus pulposus at the C5-C6 and C6-C7 levels, status post fusion surgery; shoulder pain, status post right rotator cuff repair; epicondylitis of the right elbow; and, migraine headaches. In fact, orthopedic surgeon, Dr. Joseph Bylak, indicated he had operated on her right shoulder "several times" prior to the relevant period. (ECF No. 10, p. 531). And, the record evidences that Dr. Christopher Arnold operated on her shoulder twice during the relevant period. In May 2014, he repaired a torn rotator cuff, labral tear, and torn bicep tendon in the right upper extremity. (ECF No. 10, pp. 503-507). Despite physical therapy and corticosteroid injections, he had to perform arthroscopic rotator cuff revision

4

surgery in September 2015. (ECF No. 10, pp. 664-667). As of her last exam, on October 22, 2015, Plaintiff rated her pain as an 8 on a 10-point scale and continued to exhibit a decreased range of motion in her right shoulder. (ECF No. 10, pp. 677-681). Dr. Arnold prescribed physical therapy.

Following her shoulder surgery in 2014, Plaintiff developed numbness in her upper extremities. Nerve conduction studies completed in October 2014 showed left ulnar neuropathy consistent with ulnar entrapment at the elbow and mild slowing across the right elbow. (ECF No. 10, pp. 599-602, 607-609). Exams also documented decreased strength, diminished sensation in the right elbow, positive Tinel's sign, and positive carpal compression. In February 2015, Dr. Arnold diagnosed bilateral elbow cubital tunnel syndrome and carpal tunnel syndrome, but indicated it was not yet significant enough to warrant surgery. (ECF No. 10, pp. 452-458, 470-472, 508-513). Accordingly, he ordered physical therapy and night splints. In April 2015, she began experiencing a drawing sensation in her arms and hands. (ECF No. 10, pp. 612-613, 617-68). The splints were not helping, and she was experiencing sleep disturbance. Neurologist, Dr. John Kareus, noted marked pain in the upper extremities and shoulders with palpation and strength testing, mild sensory loss in the medial nerve distribution bilaterally, and a minimal Phalen's sign. He concluded the pain was due to fibromyalgia, and prescribed Lyrica.

In June 2015, she reported constant right elbow pain. (ECF No. 10, pp. 649-651, 654-656). An exam revealed tenderness along the lateral medial epicondyle, pain with resisted wrist extension and flexion, and a positive impingement sign. Although x-rays of her elbow were unremarkable, Dr. Arnold ordered an MRI and referred her back to Dr. Kareus. The MRI

5

ultimately showed some slight soft tissue swelling along the medial epicondyle and abnormal signal of the ulnar nerve with thickening of the ulnar nerve, which could represent mild ulnar neuritis, possibly caused by soft tissue compression at the cubital tunnel. (ECF No. 10, p. 659).

In early July, Plaintiff returned to Dr. Arnold with complaints of elbow pain aggravated by movement. (ECF No. 10, pp. 646-648, 652-653). She also reported an inability to lift her arm above her head. On July 20, Dr. Kareus noted mild weakness in her left hand, a positive Phalen's test on the left, positive Tinel's sign bilaterally, numbness at the median nerve distribution on the right side, and numbness at the ulnar and median nerve distributions on the left. (ECF No. 10, p. 692-693). It was, however, difficult for him to assess her muscle function because she "gave way secondary to pain." Thus, he ordered repeat bilateral nerve conduction studies that ultimately showed ulnar neuropathy at the elbow on the left side. (ECF No. 10, pp. 698-701).

On September 23, 2015, while performing arthroscopic revision surgery on her right shoulder, Dr. Arnold administered a corticosteroid injection to the medial and lateral epicondyle. (ECF No. 10, pp. 664-667). And, at her final follow-up of record, Plaintiff reported continued tingling and numbness in her arms.

The record also contains three RFC assessments. On March 17, 2015, and June 29, 2015, non-examining consultants reviewed the record and concluded Plaintiff could perform sedentary work with limitations on her ability to push and/or pull or reach overhead with her upper extremities. (ECF No. 10, pp. 83-85, 101-104). Additionally, the consultants restricted Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling.

Then, in April 24, 2015, Plaintiff's physical therapist, Velvet Medlock, conducted a functional capacity evaluation of the Plaintiff. (ECF No. 10, pp.574-587). Testing revealed the ability to frequently sit; occasionally stand and reach out; and, never squat, reach up, or bend. Plaintiff's lifting ability also fell within the sedentary or less than sedentary range, and she could not perform any overhead activities. Further, she had a moderate to severe deficit in the grip strength in her right hand. Accordingly, Ms. Medlock completed a medical source statement indicating the Plaintiff could sit for 1 hour at a time for up to 4 hours per day; stand for 30 minutes at a time for up to 2 hours per day; walk for 15 minutes at a time for up to 2 hours per day; occasionally lift 10 pounds and carry 5 pounds; occasionally push, pull, and reach; rarely work with arms in an extended position; never work above shoulder level or overhead; rarely grasp with her right hand; and, occasionally grasp with her left hand and finger bilaterally.

Despite summarizing this evidence in his opinion, the ALJ gave the FCE only "some weight…in so far as it [was] consistent with the capacity for sedentary work with only occasional overhead reaching," and claimed to give the consultants' opinions "substantial weight." (ECF No. 10, pp. 24-25). His only stated reasons for discrediting the Plaintiff's subjective complaints concerning her upper extremities appear to be the fact that she went on a cruise in September 2015, and his own opinion that she was healing well following her most recent surgery. (ECF No. 10, p. 26). *See Finch v. Astrue*, 547 F. 3d 933, 937-938 (8th Cir. 2008) (holding ALJ must not substitute his opinions for those of the physician). The mere fact that she went on a cruise, however, has no bearing on her ability to use her upper extremities to perform work-related activities. Further, although she did not suffer any post-surgical

7

complications, this was at least her third surgery on her right shoulder. And, it is clear Plaintiff was limited in her ability use her upper extremities throughout the relevant time period, with greater restrictions in the use of her right arm than her left. Likewise, the evidence indicates she had numbness and decreased grip strength in her right hand necessitating additional work restrictions. Accordingly, the undersigned finds that remand is necessary to allow the ALJ to reconsider the Plaintiff's RFC.

On remand, the ALJ is directed to obtain an RFC assessment from Dr. Arnold, attesting to the Plaintiff's ability to use her upper extremities for work-like tasks. If Dr. Arnold is unable or unwilling to complete an RFC assessment, then the ALJ should order a consultative orthopedic exam, complete with a thorough RFC.

### IV. Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of June, 2018.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE